Filed 10/23/13  P. v. Giles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> QUINCY GILES, <br><br> Defendant and Appellant. | B241469 <br><br> (Los Angeles County <br> Super. Ct. No. LA068902) |

APPEAL from a judgment of the Superior Court for Los Angeles County, Gregory A. Dohi, Judge.  Affirmed.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant Quincy Edward Giles of two counts of second degree robbery (Pen. Code,[1] § 211), two counts of assault with a firearm (§ 245, subd. (b)), and one count of being a felon in possession of a firearm (§ 12021, subd. (a)(1)). As to the robbery counts, the jury found that defendant personally used a firearm (§ 12022.53, subd. (b)), and as to the assault with a firearm counts, the jury found that defendant personally used a semi-automatic firearm (§§ 1203.06, subd. (a)(1), 12022.5). The jury also found that all of the crimes were committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1)(A), (C).)[2] Defendant admitted four prior prison term allegations (§ 667.5, subd. (b)), although the prosecutor subsequently informed the court that the four prior convictions defendant suffered resulted in only three separate prison terms. The trial court sentenced defendant to the upper term of five years on the first robbery count, plus consecutive terms of 10 years under section 12022.53, subdivision (b), and 10 years under section 186.22, subdivision (b)(1)(C), and one year for each of two prior prison terms (the court exercised its discretion not to impose the enhancement as to the remaining eligible prior prison term). The court also imposed a consecutive one-year sentence (one-third the midterm) on the second robbery count, but imposed and stayed the gun and gang enhancements on that count, and imposed and stayed mid-term sentences of six years and the gun and gang enhancements for each of the assault counts. Finally, the court sentenced defendant to a concurrent term of two years on the felon in possession of a firearm

---

[1] Further undesignated statutory references are to the Penal Code.

[2] The verdict forms referenced subdivision (b)(1)(C) of section 186.22 for the robbery and assault counts, and subdivision (b)(1)(A) in the felon in possession count.

count.[3]  The total aggregate sentence is 28 years in prison.  Defendant appeals from the judgment.

## BACKGROUND

At around 1:00 p.m. on September 8, 2011, Jung Woolsey and Keith Emstrom were working at a branch of U.S. Bank located in a Vons supermarket in Agoura Hills.  Woolsey, the bank manager, was on the telephone and had turned around to put something behind the bank counter when she heard a loud thump.  When she turned back, she saw a man inside the employee's section of the bank, holding a gun.  He pointed the gun at her and told her to get on the ground.  She complied.  Emstrom, who also was on the telephone, saw the man coming over the counter with the gun.  After forcing Woolsey down to the ground, the man came over to Emstrom, ripped the telephone out of Emstrom's hand, put the gun on top of Emstrom's head and shoved him to the ground.  The man told Woolsey and Emstrom to open their cash drawers and coin vaults, and both complied.  He emptied both cash drawers into a bag on the counter, which was being held by

---

[3]     The court had also imposed a 10-year gang enhancement on the felon in possession count, to be served concurrently, but in a nunc pro tunc order issued on February 19, 2013, it indicated it intended to remove that enhancement.  The trial court had received a letter from defendant's appellate counsel in which counsel noted that the 10-year gang enhancement could not be imposed on that count under section 186.22, subdivision (b)(1)(C) because felon in possession of a firearm is not a violent offense.  The court noted that the proper enhancement for a non-violent offense is section 186.22, subdivision (b)(1)(A), and that section 186.22, subdivision (b)(1)(C) should not have been alleged for the felon in possession count (although it also noted that that jury verdict form cited the proper code section).  The court stated in its February 19, 2013 minute order that it intended to strike the gang enhancement for that count as both an illegal sentence and on its own motion under section 1385, and, unless it heard from either party, it would order the change and that a modified abstract of judgment be prepared on April 4, 2013.  Apparently, the District Attorney did not object, because on June 3, 2013, this court received the trial court's order and the modified abstract of judgment reflecting the change.

another man, and grabbed as many of the coins as he could until the other man yelled, "Time, time, time." Both men then left the store. Woolsey and Emstrom identified defendant as the man with the gun, at both the preliminary hearing and the trial.[4]

Kathleen Rickabaugh pulled into the parking lot of the Vons supermarket on the afternoon of September 8, 2011, and noticed a car parked in the red zone with its flashers on. She saw one or two men run in front of her car, bent over and holding something, and get into the parked car. She wrote down the license plate number of the car and went into the Vons, where she asked if there had been a robbery. Someone there was already on the telephone with the police, so she gave him or her the license plate number. The car Rickabaugh had seen was found by Detective Tim Cooley of the Los Angeles County Sheriff's Department later that day, parked in between two stalls in a condominium complex near the Vons, with the driver's window and rear passenger window down and its hazard lights still flashing. Detective Cooley recovered a black glove with green trim from the driver's seat.

At around 3:00 to 3:30 p.m. on September 8, 2011, Detective Patrick Flaherty of the Los Angeles Police Department was monitoring gang activity in the vicinity of 115th Street and Vermont Avenue in South Los Angeles. Detective Flaherty, a member of the Southeast Division Gang Impact Team, was assigned to monitor gangs primarily on the west side of the Southeast Division, including the Denver Lane Bloods. He had known defendant for several years through contacts with him as a police officer; during at least one of those contacts, defendant admitted he was a member of the Denver Lane Bloods gang.

---

[4]     Woolsey also identified defendant from a photo six-pack a couple of months after the robbery.

4

On the afternoon of September 8, Detective Flaherty and his partner pulled into a parking lot on 115th Street near Vermont Avenue, and saw defendant standing next to a blue Dodge Durango. There were several people in or around the Durango, including someone named McAfee.[5] When Detective Flaherty and his partner got out of their car to talk to defendant, he saw that defendant had money in his hands. When defendant saw the detective, he dropped the money and got into the Durango, on the rear passenger side. Detective Flaherty saw a man he knew through prior contacts, Mackie Jones (who also was a member of the Denver Lane Bloods), inside the Durango in the rear on the driver's side, manipulating a large kitchen trash can. Jones showed fear when he saw Detective Flaherty and his partner; McAfee tried to flee by jumping over a retaining wall near where the Durango was parked. The house on the other side of the wall belonged to defendant's grandmother, and was known to be a Denver Lane Blood hangout. The detectives detained all of the people who had been in or around the Durango.

Detective Flaherty looked inside the Durango and saw loose cash all over the back seat. When he reported what he saw, he was notified to hold the crime scene for the Sheriff's Department. When Detective Mark Gittens from the Sheriff's Department arrived at the scene, he showed Detective Flaherty surveillance photos from the bank.[6] Detective Flaherty told him that both suspects

---

[5]    At the preliminary hearing, Emstrom identified McAfee as the accomplice in the robbery. Two of the people who were in or by the Durango (other than defendant) were known members of the Denver Lane Bloods gang; Detective Flaherty did not know the other two people, one of whom was McAfee.

[6]    Detective Rodney Wagner of the Sheriff's Department was given surveillance videos and still photos from the videos when he responded to the bank shortly after the robbery.

in the photos were with the Durango when he and his partner arrived; Detective Flaherty specifically identified defendant from the photos.

Detective Gittens and his partner searched the Durango and found United States currency strewn throughout the car, and a lot of coins. The bills and coins were wet. The detectives also recovered a purse, a trash can, money trays, a coin case, two baseball caps, and a hoodie. Inside the purse was a black glove, and inside the glove was a loaded .25 caliber semi-automatic pistol. After collecting evidence from the Durango, a police officer directed Detective Gittens' attention to a trash can that was in the parking lot, about 30 to 40 feet from the Durango, from which Detective Gittens collected a hat, black shirt, and a sweater. Those items of clothing resembled the clothing worn by the suspects in the surveillance photos.

The day after the robbery, Detective Wagner returned to the bank with the money that had been collected from the Durango. He gave the money to bank employee Tiffany Brod, and asked her to check to see if any of the "bait money" was included. (The bank keeps track of the serial numbers of certain bills that are in each cash drawer, and refers to those bills as "bait money.") Brod compared the serial numbers of the bills that had been returned to the bank records and determined that all of the bait money was there.

Defendant was charged by information with two counts of second degree robbery of Woolsey (count 1) and Emstrom (count 3), two counts of assault with a semiautomatic firearm against Woolsey (count 2) and Emstrom (count 4), and possession of a firearm by a felon, with personal use of a gun allegations as to the first four counts and gang allegations as to all of the counts, along with four prior prison term allegations.

At trial, the prosecution presented testimony from the victims, Rickabaugh, Brod, and several of the detectives involved in the case, one of whom, Detective Flaherty, also testified as a gang expert. Detective Flaherty opined that the bank

6

robbery (as presented in a hypothetical) was committed for the benefit of and in association with a criminal street gang and with the specific intent to further, promote, or assist in criminal conduct of gang members.  In addition, the jury was shown the surveillance video and several still photos taken from that video.  The jury also was shown the glove recovered from the car found near the Vons and photographs of the shoes defendant was wearing when he was arrested.[7]  Detective Wagner testified that the glove appeared to be the mate of the glove the man in the surveillance video was wearing during the robbery, and the shoes defendant was wearing appeared to be the same as the shoes shown in the surveillance video.

The defendant did not present an affirmative defense.

## DISCUSSION

After review of the record, defendant's court-appointed counsel filed an opening brief asking this court to review the record independently in accordance with the holding of *People v. Wende* (1979) 25 Cal.3d 436, 441.

We advised defendant that he had 30 days within which to submit any contentions or issues that he wished us to consider.  No response has been received to date.

We have examined the entire record and are satisfied that no arguable issues exist, and that appellant has, by virtue of counsel's compliance with the *Wende* procedure and our review of the record, received adequate and effective appellate review of the judgment entered against him in this case.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278; *People v. Kelly* (2006) 40 Cal.4th 106, 112-113.)

---

[7]     The jury also listened to a recording of Detective Wagner's interview of defendant, in which defendant identified the Durango as his wife's car, but denied any involvement with the robbery.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:



MANELLA, J.



SUZUKAWA, J.